UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PALL CORPORATION,

                              Plaintiff,                                          <u>MEMORANDUM</u>
                                                                                  <u>OPINION AND ORDER</u>

              -against-                                            CV 97-7599 (RRM)(ETB)
                                                                                  CV 03-0092 (RRM)(ETB)

3M PURIFICATION INC.,

                              Defendant.
----------------------------------------------------------------------X

       Before the Court is the defendant's motion, pursuant to Rule Federal Rule of Civil Procedure 37(b)(2)(C), to enforce the Court's Orders dated October 13, 2010 and December 7, 2010, which awarded defendant its reasonable attorney's fees and expenses as a result of the plaintiff's failure to comply with the orders of the Court with respect to the production of documents. For the following reasons, defendant's motion is granted in part and denied in part.

F<small>ACTS</small>

       The plaintiff, Pall Corporation ("Pall), commenced these actions on December 30, 1997 and January 8, 2003, respectively, seeking injunctive relief and damages for alleged patent infringement. In October 2007, the defendant, 3M Purification, Inc. ("3M"), petitioned the United States Patent and Trademark Office (the "PTO") to reexamine the validity of Pall's asserted patents in suit. On July 15, 2009, Pall filed its First Amended Complaint, reflecting the impact of the PTO's determinations. In response, 3M asserted counterclaims for inequitable conduct and certain affirmative defenses, based on Pall's alleged misrepresentations to the PTO

during the reexamination proceedings. <u>See</u> Order of Boyle, M.J. dated Jan. 20, 2010, at 10.

Thereafter, Pall filed letters with the Court seeking to sever and to stay discovery of 3M's inequitable conduct allegations, noting that 3M already had "full access to the documentary record of the most recent reexamination." (Letter of H. Michael Hartmann dated Feb. 16, 2010, at 3.) Even though the Court adopted 3M's proposed discovery schedule, Pall sought a protective order to preclude discovery relating to 3M's inequitable conduct allegations. (Letter of H. Michael Hartmann dated Mar. 16, 2012, at 1-3.)

On April 8, 2010, the Court denied Pall's motion for a protective order. <u>See</u> Order of Boyle, M.J. dated Apr. 8, 2010, at 4. Pall subsequently produced public prosecution documents and a forty-four page privilege log identifying over 300 withheld documents. (Letter of Garret A. Leach dated May 3, 2010, Ex. C.) Citing Pall's refusal to comply with discovery requests, on May 3, 2010, 3M filed its first motion to compel. (<u>Id.</u>) On June 8, 2010, the Court granted 3M's motion to compel, ordering Pall to either waive attorney-client privilege and work product protection or be precluded from raising its good faith defense to 3M's inequitable conduct allegations. <u>See</u> Order of Boyle, M.J. dated June 8, 2010, at 7. Pall produced the documents listed in its privilege log and did not identify any additional documents as being withheld based on privilege or any other grounds. (Def. Mot. to Enforce the Court's Sanctions Orders 2.) However, during subsequent depositions conducted in July 2010, Pall's patent reexamination attorneys testified about undisclosed, categorically withheld documents. (Letter of Garret A. Leach dated Aug. 16, 2010, Ex. C, F.)

Based on the deposition testimony of Pall's reexamination attorneys, 3M filed its second motion to compel on August 16, 2010, asserting that Pall had still failed to comply with the

Court's Orders.  (Letter of Garret A. Leach dated Aug. 16, 2010, at 1.)  On October 13, 2010, the Court granted 3M's second motion to compel, ordering Pall to produce the documents within ten business days.  See Order of Boyle, M.J. dated Oct. 13, 2010, at 1.  The Court also advised the parties that it would "assess costs" with regard to 3M's second motion to compel.  (10/13/10 Hrg. Tr. 7:10-11.)  On October 28, 2010, Pall produced approximately 9,000 pages of documents that were not previously produced or identified on any log of withheld documents.  (Letter of Paul J. Korniczky dated Oct. 28, 2010, at 1.)

On November 24, 2010, 3M filed its third motion to compel, which included a request for sanctions in the form of "attorney's fees and costs for all activities relating to Pall's failed good-faith defense, including those relating to motions, depositions, written discovery, and the like." (Letter of Garret A. Leach dated Nov. 24, 2010, at 2.)  Shortly thereafter, Pall produced another 12,000 pages of documents.  (Letter of Paul J. Korniczky dated Nov. 30, 2010, at 1.)

On December 7, 2010, the Court ordered Pall to provide a "complete list of any withheld 'litigation related' documents" and extended to Pall "a five (5) business day safe haven period for the production of [any] additional documents that it continue[d] to withhold as a result of any privilege or otherwise."  Order of Boyle, M.J. dated Dec. 7, 2010, at 3.  The Court further awarded 3M its costs, including reasonable attorney's fees, "as it relates to any re-examination of any witness arising out of the untimely production of new documents by Pall during the post-October 13, 2010 period."  Id.  Thereafter, Pall produced more than 2,800 additional pages of documents.  (Def. Mot. to Enforce the Court's Sanctions Orders 5.)  On December 21, 2010, Pall produced sixty-eight pages of redacted "Pall v. Cuno Status Update[s]" for 2009 to 2010 and a revised log of withheld documents.  (Id.)  Thereafter, on January 14, 2011, Pall produced over

2,000 additional documents.  (Id.)

During the week of January 17, 2011, 3M re-deposed Pall's patent reexamination attorneys.  (Id.)  3M now brings the current motion to enforce the Court's sanctions orders, requesting $134,977.00 in attorney's fees and costs.

D<small>ISCUSSION</small>

I.   Legal Standard

Federal Rule of Civil Procedure 37(b)(2)(C) states, in pertinent part, that where a party fails to obey a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Similar provisions apply in favor of the prevailing party on a motion to compel disclosure material.  See Fed. R. Civ. P. 37(a)(5).

"The Second Circuit has held that courts awarding attorney's fees are to award the 'presumptively reasonable fee,' which is determined by multiplying the reasonable hourly rate by the number of reasonably expended hours."  Leser v. U.S. Bank N.A., No. 09-CV-2362, 2012 U.S. Dist. LEXIS 21626, at *8 (E.D.N.Y. Feb. 21, 2012) (citing Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 289 (2d Cir. 2011)).  A presumptively reasonable fee is determined by "bear[ing] in mind all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted).

The party seeking attorney's fees bears the burden of establishing not only entitlement to an award, but also the amount.  See Green v. City of New York, 403 Fed. Appx. 626, 630 (2d Cir. 2010) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended."); Pilitz v. Inc. Vill. of Freeport, No. 07-CV-4078, 2011 U.S. Dist. LEXIS 132666, at *12 (E.D.N.Y. Nov. 17, 2011) ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed.").  Further, a party seeking attorney's fees must support its hours expended by submitting accurate, detailed and contemporaneous time records.  See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983) ("These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.").  If the documentation is inadequate, the Court may reduce the award accordingly.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("Where the documentation is inadequate, the district court may reduce the award accordingly.").

In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)).  The relevant legal community is generally the district in which the court is located.  See Brady v. Wal-Mart Stores, Inc., No. 03-CV-3843, 2010 U.S. Dist. LEXIS 115380, at *9 (E.D.N.Y. Oct. 29, 2010) (citing Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997)) (additional citation omitted).  While a court may use an out-of-district rate if it is clear that a reasonable client would pay such a rate, the presumption is that a paying client would hire counsel whose rates are consistent with those

in the district in which the action is pending.  See Brady, 2010 U.S. Dist. LEXIS 115380, at *10 (citing Arbor Hill, 522 F.3d at 191).  The presumption may be rebutted if the party seeking to recover a higher hourly rate demonstrates that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009).

"Attorney's fees awards [also] include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); see also Larsen v. JBC Legal Group, P.C., 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (internal quotation marks and citations omitted).  "However, expenses which are part of the attorneys' ordinary overhead are not to be reimbursed."  SEC v. Goren, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing N.Y. State Nat'l Org. for Women v. Terry, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990)).

II.   Award

    A.   Reasonable Hourly Rate

Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be "approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates."  Bogosian v. All Am. Concessions, No. 06-CV-1633, 2012 U.S. Dist. LEXIS 69987, at *7 (E.D.N.Y. May 18, 2012) (citing Hugee v. Kimso Apartments, LLC, No. 11-CV-4996, 2012 WL 1096086, at *12 (E.D.N.Y. Apr. 3, 2012)); see

also Olsen v. County of Nassau, No. CV 05-3623, 2010 U.S. Dist. LEXIS 5915, at *14-15 (E.D.N.Y. Jan. 26, 2010) (determining reasonable hourly rates to be $375 to $400 for partners, $200 to $250 for senior associates and $100 to $175 for junior associates); Gutman v. Klein, No. 03-CV-1570, 2009 U.S. Dist. LEXIS 123057, at *8 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300 to $400 for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates). Attorney's fees for tasks performed by legal assistants are typically awarded at a rate of approximately $75 per hour. See, e.g., Fuerst v. Fuerst, No. 10-CV-3941, 2012 U.S. Dist. LEXIS 48545, at *9 (E.D.N.Y. Apr. 5, 2012); Local 282, Int'l Bhd. of Teamsters v. Pile Foundation Constr. Co., No. 09-cv-4535, 2011 U.S. Dist. LEXIS 86644, at *35 (E.D.N.Y. Aug. 5, 2011).

3M seeks to recover attorney's fees at the following rates: (1) $565 to $684 per hour for Paul R. Garcia, a partner with nineteen years of experience; (2) $490 to $628 per hour for Garret A. Leach, a partner with eleven years of experience; (3) $395 to $535 per hour for Michael Cohen, a senior associate with six years of experience; (4) $165 to $209 per hour for Melissa Knost, a legal assistant; and (5) $130 per hour for Gwen Kaplan, a project assistant.[1] 3M argues that the presumption of applying in-forum hourly rates has been rebutted here due to the nature and complexity of the case, the size and caliber of its counsel's law firm, and the resources marshaled on Pall's side in prosecuting this action. (Def. Mot. to Enforce the Court's Sanctions Orders 6-8, 10-11.) According to 3M, an intellectual property case, particularly a patent case, merits the use of attorneys with specialized expertise. (Id. at 10.) 3M further contends that such

---

[1] There are two billing rates provided for certain attorneys/assistants because the billing rate of each of the individuals increased from 2010 to 2011.

expertise was found at Kirkland & Ellis, a large and respected law firm. (Id.) Finally, 3M asserts that, like itself, Pall also retained out-of-district counsel, which 3M claims demonstrates that a reasonable client would have done likewise and paid out-of-district rates. (Id.) Accordingly, 3M asserts that out-of-district hourly rates should be awarded here.

Intellectual property expertise does merit special consideration when determining attorney's fees. See, e.g., General Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc., 817 F. Supp. 2d 66, 76 (E.D.N.Y. 2011), adopted by, 2011 U.S. Dist. LEXIS 103447 (E.D.N.Y. Sept. 12, 2011) (noting that "plaintiffs' counsel's specialization in intellectual property litigation merits somewhat higher rates than normal for this district"); Rates Tech., Inc. v. Mediatrix Telecom, Inc., No. 05-CV-2755, 2011 U.S. Dist. LEXIS 34941, at *10 (E.D.N.Y. Mar. 31, 2011) ("The Court thus evaluates the reasonableness of counsel's rates using Eastern District prevailing rates as a basis of comparison, remaining mindful that intellectual property cases generally justify higher-than-average hourly rates."); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., No. 04-CV-2293, 2009 U.S. Dist. LEXIS 119707, at *19 (E.D.N.Y. Dec. 23, 2009) ("[B]ecause intellectual property matters . . . require specialized knowledge, courts in this district have approved higher hourly rates than those generally awarded.") (collecting cases).

While 3M is correct that the size and caliber of a firm may be considered when determining a reasonable hourly rate, as stated supra, the Court will look at firms of similar size and caliber within the district in which the Court sits. See Gierlinger, 160 F.3d at 882. 3M offers an array of billing rates for firms throughout the country, but none for this district. (Def. Mot. to Enforce the Court's Sanctions Orders Ex. 3-4.) This is a substantial inadequacy in 3M's application.

The fact that Pall, too, has retained out-of-district counsel is irrelevant. 3M bears the burden of establishing the reasonableness of the fees it seeks. See Simmons, 575 F.3d at 176 ("The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experienced-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result."). 3M has failed to make an adequate showing in this regard. When the party seeking attorney's fees fails to show that local counsel was unable or unwilling to take the case, or that local counsel would produce an inferior result, in-forum hourly rates will apply. See, e.g., Garis v. Uncut-RawTV, Inc., No. CV 06-5031, 2011 U.S. Dist. LEXIS 111254, at *27-28 (E.D.N.Y. July 5, 2011), adopted by, 2011 U.S. Dist. LEXIS 106314 (E.D.N.Y. Sept. 21, 2011) (finding that where the party seeking fees "provide[d] no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or, alternatively, that no in-district counsel possessed such expertise," in-district hourly rates applied); Mamiya Am. Corp. v. Huayi Bros., No. 09-CV-5501, 2011 U.S. Dist. LEXIS 34991, at *32 (E.D.N.Y. Mar. 11, 2011), adopted by, 2011 U.S. Dist. LEXIS 34996 (E.D.N.Y. Mar. 31, 2011) (applying in-district rates where plaintiff did not provide the "particularized showing" required by Simmons).

Based on the foregoing, the hourly rates are adjusted as follows: (1) $450 per hour for Garcia; (2) $400 per hour for Leach; (3) $325 per hour for Cohen; (4) $75 per hour for Knost; and (5) $75 per hour for Kaplan. These rates are consistent with those awarded by other courts in this district. The motions for which sanctions were awarded were relatively simple discovery motions that, contrary to the argument asserted by 3M, do not warrant the requested upward adjustment in the hourly rates based on the intellectual property nature of this action.

  B. <u>Time Expended</u>

    This request for sanctions award relates to: (1) the reexamination of witnesses in which the plaintiff's witness(es) were instructed not to answer based on the invocation of the attorney-client or work product privilege, (10/13/10 Hrg. Tr. 7, 12); (2) any examination or reexamination of plaintiff's witness(es) occasioned by the production of new documents, (<u>id.</u> and Order of Boyle, M.J. dated Oct. 13, 2010); (3) costs, including reasonable attorney's fees, related to the preparation and argument of 3M's successful motion to compel, dated August 16, 2010 and decided on October 23, 2010, (Order of Boyle, M.J. dated Oct. 13, 2010); (4) "any re-examination of any witness arising out of the untimely production of new documents by Pall during the post-October 13, 2010 period," (Order of Boyle, M.J. dated Dec. 7, 2010 at 3); and (5) costs, including reasonable attorney's fees, related to 3M's motion to compel dated November 24, 2010, including the oral argument with respect to the motion held on December 7, 2010, (<u>id.</u>).

    1. <u>The August 16, 2010 Motion to Compel and Oral Argument</u>

    Pall contends that attorney's fees for the time spent preparing the August 16, 2010 motion to compel and the subsequent oral argument concerning the motion are not recoverable because they fall outside the scope of the Court's Order. (Pl. Opp'n to Def. Mot. to Enforce the Court's Sanctions Orders 19.) Specifically, Pall asserts that when the Court awarded 3M costs "as it relates to any re-examination of any witness arising out of the untimely production of new documents," (Order of Boyle, M.J. dated Dec. 7, 2010, at 3), it was to be construed narrowly, and hence the August 16, 2010 motion and the October 13, 2010 oral argument are not "related." Pall is incorrect. The motion to compel and subsequent oral argument are inherently related and, therefore, the costs for the time spent preparing the motion

-10-

and preparing for and attending the oral argument are indeed recoverable.

While Pall challenges 3M's entitlement to recover fees for the August 16, 2010 motion to compel and oral argument, it does not, however, dispute the reasonableness of the time expended on the motion or the oral argument, which totals 34.1 hours. Accordingly, the Court finds that the time expended on the motion and oral argument is reasonable.

### 2. January 2011 Depositions

Pall argues that the time expended on the January 2011 depositions is not reasonable. It first contends that the depositions of Korniczky and Forzano are not covered by the Court's Order because it was the first time either was deposed. (Pl. Opp'n to Def. Mot. to Enforce the Court's Sanctions Orders 16.) However, Korniczky and Forzano were both previously deposed on November 9, 1998 and in July 2010, respectively. (Def. Mot. to Enforce the Court's Sanctions Orders 17.) Accordingly, since the January 2011 depositions of Korniczcky and Forzano were actually "reexaminations," they fall within the scope of the Order.

Pall also argues that 3M's use of more than one attorney at each deposition was excessive. (Pl. Opp'n to Def. Mot. to Enforce the Court's Sanctions Orders 15.) However, for complex litigations, such as this one, attendance by more than one attorney at a deposition is considered reasonable. See, e.g., Serin v. N. Leasing Sys., No. 7:06-CV-1625, 2011 U.S. Dist. LEXIS 44151, at *20-21 (S.D.N.Y. Apr. 19, 2011) (finding two attorneys present at depositions in a civil racketeering action to be reasonable given the "complexity" of the case); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (finding the attendance of two attorneys at depositions reasonable in a Title VII employment discrimination action).

Pall also objects to the hours spent preparing for the depositions. The aggregate time of

the depositions of Belz, Hartmann, Phelps, Kornizcky and Forzano was approximately eighteen hours. (Korniczky Decl. ¶ 7; Def. Reply Mem. 8.) However, 3M's counsel billed 163.3 hours preparing for the January 2011 depositions, which amounts to approximately thirty hours of preparation time per deposition. (Def. Mot. to Enforce the Court's Sanctions Orders 13 and Ex. 1.) While preparing for more than thirty hours per deposition is not inherently unreasonable, see Manzo v. Sovereign Motor Cars, Ltd., No. 08-CV-1229, 2010 U.S. Dist. LEXIS 46036, at *32-33 (E.D.N.Y. May 11, 2010) (finding over thirty hours of preparation time for each of two depositions reasonable), the Court finds the amount of preparation time excessive here given the fact that this was not the first time that any of the aforementioned individuals were deposed. In addition, a significant portion of the preparation time expended by 3M's attorneys pertained to document review as a result of Pall's untimely productions. However, such documents would have required review regardless of when they were produced. See Phoenix Four, Inc. v. Strategic Res. Corp., No. 05 Civ. 4837, 2006 U.S. Dist. LEXIS 52402, at *7 (S.D.N.Y. Aug. 1, 2006) (refusing to award fees for review of documents untimely produced because they would have had to have been reviewed anyway).

Accordingly, the Court finds that ten hours of preparation time per deposition is more than reasonable. This, added to the eighteen hours of deposition time, amounts to a total of sixty-eight hours that are compensable in connection with the January 2011 depositions, which translates to approximately a sixty percent (60%) reduction in the number of hours billed by each attorney and assistant with respect to the January 2011 depositions.[2]

---

[2] When reduced by sixty percent, the total hours being reimbursed with respect to the January 2011 depositions amounts to 72.5.

       3.      The Instant Motion

Pall also asserts that the time expended on the instant motion is not reasonable.[3] The Court agrees with Pall. This is not a complex motion. It is a simple and straightforward application for attorney's fees. While 3M is correct that the time spent preparing a fee application is compensable, see U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 486 (S.D.N.Y. 1989) (stating that any argument that parties cannot recoup attorney time spent on a fee application is "contrary to settled law in this Circuit"), the Court finds the 142.5 hours billed by 3M's counsel in connection with this motion to be excessive.[4] Accordingly, the hours billed will be reduced by approximately seventy-five percent (75%) to 35.8 hours.

    C.    Block Billing

Upon review of the billing records provided, the Court finds that Kirkland & Ellis has engaged in extensive block-billing.[5] Block-billing, whereby multiple tasks are aggregated in

---

[3] This includes the pre-motion letter, the pre-motion conference, the motion and the reply.

[4] Specifically, 3M's counsel billed 18.7 hours preparing the pre-motion letter, 34.4 hours in connection with the pre-motion conference, 52.1 hours on the moving papers and 37.3 hours on the reply papers.

[5] For example, an August 16, 2010 time entry for Paul Garcia bills 1.5 hours (although only 0.5 hours are included in the fee request) for:

> Telephone conference with client re strategy and next steps; revise motion to compel; communicate with team re same; communicate with client re same.

Similarly, a September 27, 2011 time entry for Michael Cohen bills 5.8 hours for:

> Prepare for the pre-motion conference re 3M's attorney's fees

one billing entry, "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." Penberg v. HealthBridge Mgmt., No. 08-CV-1534, 2011 U.S. Dist. LEXIS 31022, at *29 (E.D.N.Y. Mar. 22, 2011) (internal quotation marks and citations omitted). "Where billing entries contain merely vague descriptions of services rendered, or where counsel has engaged in block-billing, courts have used percentage reductions 'as a practical means of trimming fat from a fee application.'" Id. (quoting Carey, 711 F.2d at 1146). Due to the extensive block-billing here, the Court finds an across-the-board percentage reduction of thirty percent (30%) for all hours expended to be appropriate.

Accordingly, taking into account the reduction in hourly rates and the time expended, as discussed supra, 3M is awarded attorney's fees as follows: (1) 20.2 hours for Garcia at an hourly rate of $450 per hour; (2) 33.2 hours for Leach at an hourly rate of $400 per hour; (3) 34 hours for Cohen at an hourly rate of $325 per hour; (4) 11.8 hours for Knost at an hourly rate of $75 per hour; and (5) 0.6 hours for Kaplan at an hourly rate of $75 per hour, for a total attorney's fees award of $34,350.00.

D. Costs

3M also seeks to recover the following expenses: (1) $359.70 in travel expenses for Garcia; (2) $718.93 in travel expenses for Cohen; (3) $9,109.76 in court reporter costs for the

---

amount, including reviewing and analyzing the parties['] prior letter motions and exhibits; analyze relevant cases cited by both parties; conference with G. Leach re potential arguments and responses; attend the pre-motion conference; discuss the outcome of the same with G. Leach and A. Medved.

(Def. Mot. to Enforce the Court's Sanctions Orders Ex. 1.)

depositions of Belz, Korniczky, Forzano, Hartmann and Phelps; and (4) $5,677.16 in videographer costs for the aforementioned depositions,[6] for a total of $15,865.55 in costs. For the following reasons, the travel and videographer costs are denied and the court reporter costs are granted in part.

1. Travel Expenses

3M seeks to recover $1,078.63 in travel expenses for Garcia and Cohen in connection with the oral argument held on October 13, 2010, with $359.70 attributable to Garcia's travel and $718.93 attributable to Cohen's. (Def. Mot. to Enforce the Court's Sanctions Orders 15-16.) According to 3M, Garcia was already on the east coast at the time of the oral argument and drove to the court, but then returned to Chicago via air travel, while Cohen flew round-trip from Chicago to attend the oral argument, thereby explaining the discrepancy in travel costs for the two. (Id.)

Travel costs may be denied where a party chooses out-of-district attorneys. See, e.g., Dzugas-Smith v. Southold Union Free Sch. Dist., No. 07-CV-3760, 2010 U.S. Dist. LEXIS 101750, at *8 (E.D.N.Y. Sept. 27, 2010) ("There is no reason why Defendants should incur greater liability simply because Plaintiffs inexplicably retained a Buffalo-based attorney, when legions of competent Eastern District lawyers could have represented them."); Concrete Flotation

---

[6] 3M appears to have juxtaposed two numbers in their memorandum of law in support of their motion with respect to the court reporter and videographer costs for the deposition of Mark Phelps. While the memorandum of law states that the court reporter costs amount to $640.76 and the videographer costs amount to $762.20 for Phelps's deposition, (Def. Mot. to Enforce the Court's Sanctions Orders 16), the invoices attached demonstrate that it is actually the other way around. (Id. Ex. 1.) The court reporter costs for Phelps's deposition total $726.20 and the videographer costs amount to $640.76. (Id.) Accordingly, the actual total amount of court reporter costs sought here is $9,231.20 and the total amount of videographer costs sought is $5,555.72.

Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319, 2010 U.S. Dist. LEXIS 60560, at *22-23 (E.D.N.Y. Mar. 15, 2010), adopted by, 2010 U.S. Dist. LEXIS 60562 (E.D.N.Y. June 9, 2010) (denying costs for airfare, meals and lodging where there was "no reason these expenses needed be incurred instead of using counsel in New York - especially since [plaintiff's counsel] has an office in New York"). Pall should not be forced to pay for the travel expenses incurred by 3M's attorneys due to 3M's decision to retain a Chicago-based law firm, particularly one who has a New York office with several intellectual property lawyers who could have conceivably handled this matter. Accordingly, the travel expenses are denied.

### 2. Court Reporter Costs

3M also seeks to recover the cost of court reporters in connection with the reexaminations of Belz, Korniczky, Forzano, Hartmann and Phelps conducted in January 2011. (Def. Mot. to Enforce the Court's Sanctions Orders 15-17.) While costs for the use of court reporters are generally recoverable, see, e.g., Olsen, 2010 U.S. Dist. LEXIS 5915, at *24; Xpressions Footwear Corp. v. Peters, Nos. 94 Civ. 6136, 95 Civ. 8242, 95 Civ. 8243, 1996 U.S. Dist. LEXIS 14373, at *7 (S.D.N.Y. Sept. 30, 1996), 3M has offered nothing to support its claim that expedited and electronic copies of the deposition transcripts were necessary. Other courts faced with such requests have found these services unrecoverable. See, e.g., Settlement Funding v. AXA Equitable Life. Ins. Co., No. 09 CV 8685, 2011 U.S. Dist. LEXIS 77410, at *13-14 (S.D.N.Y. July 18, 2011) (denying costs for expedited service of deposition transcripts); AIG Global Secs. Lending Corp. v. Banc of Am. Secs., No. 01 Civ. 11448, 2011 U.S. Dist. LEXIS 1567, at *5-6 (S.D.N.Y. Jan. 6, 2011) (denying costs for realtime (electronic) transcripts on the grounds that plaintiffs had failed to establish that such transcripts were "necessary, as opposed to

merely convenient or helpful," and noting that such transcripts are "the most expensive transcription option available"); Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd., No. 09 Civ. 2570, 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009) (denying costs for RealTime service, delivery, appearance fees, rough disks and expedited service).

According to 3M, electronic and expedited copies of the deposition transcripts were necessary here in order to allow its expert to analyze and rely on evidence from the depositions in her expert report. (Def. Mot. to Enforce the Court's Sanctions Orders 16.) The Court finds such an argument unpersuasive. Accordingly, 3M's request for costs pertaining to electronic and expedited copies of the deposition transcripts, which amounts to $1,533.75, is denied. The remaining court reporter costs - $7,697.45 - are granted.

### 3. Videographer Expenses

3M's request for reimbursement of its videographer expenses is denied. According to 3M, video recordings of the depositions were "required" for the purpose of assisting the court in making credibility determinations as to the potential witnesses. (Def. Mot. to Enforce the Court's Sanctions Orders 16.) The Court disagrees and finds such expenses unnecessary. See Cielo Creations, Inc. v. Gao Da Trading Co., No. 04 Civ. 1952, 2004 U.S. Dist. LEXIS 16410, at *4-5 (S.D.N.Y. Aug. 16, 2004) (denying videotaping costs on the grounds that they were not necessary); see also AIG Globl Secs. Lending Corp., 2011 U.S. Dist. LEXIS 1567, at *5 (denying costs where plaintiffs failed to establish that they were "necessary, as opposed to merely convenient or helpful"). 3M's argument is particularly unpersuasive since there has not been any basis provided to conclude that any of the individuals deposed will not be available to testify at trial. See Ginsberg v. Valhalla Anesthesia Assocs., P.C., No. 96 Civ. 6462,

1998 U.S. Dist. LEXIS, at *9-10 (S.D.N.Y. Jan. 20, 1998) (denying videotaping costs where witness was available to testify at trial). "The mere convenience to . . . counsel in having a videotape [of a deposition] is an insufficient basis upon which to award costs." Bond v. Sterling, No. 97-CV-1607, 2000 U.S. Dist. LEXIS 1361, at *5 (N.D.N.Y. Feb. 3, 2000) (citing Tanzini v. Marine Midland Bank, 978 F. Supp. 70, 84 (N.D.N.Y. 1997)).

Moreover, in addition to the videotapes, 3M also has copies of the transcripts from the depositions. Accordingly, the videographer costs are duplicative. See Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC, No. 01 Civ. 6600, 2010 U.S. Dist. LEXIS 83798, at *27-28 n.6 (S.D.N.Y. Aug. 9, 2010) (denying videographer costs where "the videotape expenses submitted by [defendant] are duplicative, in that a transcript was also provided for the same deposition").

Based on the foregoing, 3M's request for costs is granted with respect to its court reporter fees only. Its requests for costs as they pertain to travel expenses, electronic and expedited transcripts and videographer costs are denied. 3M is awarded costs in the amount of $7,697.45.

CONCLUSION

For the foregoing reasons, defendant's motion to enforce the Court's prior sanctions orders is GRANTED IN PART AND DENIED IN PART. Defendant is awarded $34,350.00 in attorney's fees and $7,697.45 in costs, for a total award of $42,047.45. Plaintiff shall make payment within twenty (20) days.

**SO ORDERED:**

Dated: Central Islip, New York
       June 1, 2012

                                                      /s/ E. Thomas Boyle
                                                     E. THOMAS BOYLE
                                                     United States Magistrate Judge